RIVKIN RADLER LLP
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
*Attorneys for Wineve Realty Corp.*
926 RXR Plaza
Uniondale, New York 11556-0926
stuart.gordon@rivkin.com
matthew.spero@rivkin.com
Telephone:  (516) 357-3000
Facsimile:   (516) 357-3333


**UNITED STATES BANKRUPTCY COURT**         **Hearing Date:** Dec. 3, 2014, 9:45 AM
**SOUTHERN DISTRICT OF NEW YORK**         **Objection Deadline:** Nov. 26, 2014, 4:00 PM
------------------------------------------------------------x
In re:                                                                                    Chapter 11

    Rancho Vida, LLC                                                  Case no. 14-12666 (reg)

                    Debtor.
------------------------------------------------------------x

TO THE HONORABLE ROBERT E. GERBER, UNITED STATES BANKRUPTCY JUDGE

**MOTION OF WINEVE REALTY CORP. SEEKING TO: (I) LIFT THE AUTOMATIC STAY; (II) COMPEL THE DEBTOR TO MAKE IMMEDIATE PAYMENT OF ALL POST-PETITION RENT; AND (III) COMPEL THE DEBTOR TO ASSUME OR REJECT LEASE**

      Wineve Realty Corp. (the "Landlord"), the lessor of certain real property leased by the above-captioned debtor (the "Debtor"), which property is located at 570-572 Amsterdam Avenue, New York, New York and more specifically described in the Debtor's lease with the Landlord dated August 1, 2011 (the "Lease") as the First Floor Store and Portion of Basement in 572 Building and Full Basement in 570 Building (the "Property"), as and for its motion (the "Motion") for the entry of an order: (I) compelling the Debtor to immediately pay and remain current on all post-petition rent under Bankruptcy Code §365(d)(3) and awarding the Landlord an administrative expense claim for all post-petition rent that is past due and all rent that subsequently comes due and is not paid during the Debtor's bankruptcy; (II) granting the

1

Landlord relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1), Bankruptcy Rules 9006(d) and 9014(a) and (b), and Local Bankruptcy Rule 9006-1, and authorizing the Landlord to apply the security deposit at its discretion; and (iii) compelling the Debtor to assume or reject the Lease under Bankruptcy Code §365(d)(2), respectfully states as follows:

## **BACKGROUND**

1. On August 1, 2011, the Debtor and the Landlord entered into the Lease, whereunder the Debtor leased the Property from the Landlord for the time period August 1, 2011 through August 31, 2021. (*See* Lease annexed as Exhibit "A"). For the time period that is germane to this Motion, the Lease calls for basic rent to be paid: a) for the time period September 1, 2013 through August 31, 2014, at a rate of $182,414.91 per annum ($15,201.25 per month); and b) for the time period September 1, 2014 through August 31, 2015, at a rate of $187,887.36 per annum ($15,657.28 per month).

2. On March 6, 2014, the Landlord was constrained to commence an eviction proceeding in the Civil Court for the City of New York, County of New York, Housing Part as a result of the Debtor's failure to pay rent and/or related amounts due under the Lease dating back to January 16, 2014. (*See* Petition annexed as Exhibit "B"). That action is now stayed as a result of the Debtor's bankruptcy filing.

3. On September 19, 2014 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 bankruptcy petition.

4. During its bankruptcy, the Debtor has not paid any rent, use and occupancy, or other amounts due under the Lease with the exception of a single payment of $7,700 made on November 3, 2014. As a result, the Debtor is currently in arrears to the Landlord for the post-petition period in the amount of $34,073.62.

2

The itemization of this amount is as follows:

| 9/22/14 through 9/30/14 | Late fee @ 16% | Oct. 2014 | Late fee @ 16% | Nov. 2014 | Late fee @ 16% | Payment 11/3/2014 | **TOTAL** |
|---|---|---|---|---|---|---|---|
| $4,697.18 | $751.55 | $15,657.28 | $2,505.16 | $15,657.28 | $2,505.16 | ($7,700) | **$34,073.62** |

This is in addition to the $88,718.95 that the Debtor owes the Landlord for pre-petition amounts that are past due under the Lease. (*See* Affidavit of Michelle Goldman, the Landlord's Vice President, annexed hereto as Exhibit "C").

5.  Notwithstanding, the Debtor continues to occupy the Property, even though it has failed to comply with its obligations to remain current on post-petition Lease payments under Bankruptcy Code § 365(d)(3).

*I.  The Court Should Compel the Debtor to Immediately Pay All Post-Petition Rent Under §356(d)(3) and Award the Landlord an Administrative Expense Claim for All Post-Petition Rent that is Currently Past Due and that Subsequently Comes Due and is not Paid During its Bankruptcy Case.*

6.  Bankruptcy Code §365(d)(3) provides, in relevant part, that "[t]he trustee shall timely perform all of the obligations of the debtor, except those specified in Section 365(b)(2), arising from and after the order for relief under any unexpired lease or nonresidential real property, until such lease is assumed or rejected." 11 U.S.C. § 365(d)(3). The purpose of §365(d)(3) is to ensure that a landlord receives timely compensation for the debtor's post-petition, pre-rejection use and occupancy of the landlord's property at the rate specified in the parties' lease. See *Omni Partners, L.P. v. Pudgie's Dev., Inc. (In re Pudgie's Dev., Inc.)*, 239 B.R. 688, 695 (S.D.N.Y. 1999)("[L]andlord is entitled to timely payment of rent during the post-petition, pre-rejection period of the bankruptcy ... During the post-petition, pre-rejection time period, the debtor-tenant has an obligation to continue paying its lease obligations." )

3

7. The Debtor has not assumed or rejected the Lease and continues to occupy the Property, notwithstanding that it has failed and refused to pay all amounts due under the Lease during the post-petition period, with the exception of the single payment of $7,700 on November 3, 2014. This, however, still leaves not less than $34,073.62 in post-petition arrearages under the Lease as of the date hereof. The Debtor does not have any legal or equitable justification for continuing to remain in possession of the Property while it fails to comply with its Lease obligations under § 365(d)(3). Despite numerous requests, the Debtor has not taken appropriate measures to fully cure all Lease defaults as set forth above. The Court should therefore: a) compel the Debtor to immediately pay all post-petition Lease payments currently due and which subsequently come due during its bankruptcy case; and b) award the Landlord an administrative expense claim under §503(b)(1) for all post-petition rent that is currently due and any additional amounts that subsequently come due and are not paid during this bankruptcy case.

**II.    *The Court Should Lift the Automatic Stay and Authorize the Landlord to Apply the Security Deposit at its Discretion.***

8. If the Debtor does not make immediate payment of all post-petition amounts due under the Lease within two business days of the Court signing an order granting this Motion, or if the Debtor once again defaults on any of its obligations under the Lease, the Landlord should be granted immediate relief from the automatic stay to enable it to continue the eviction proceeding and/or otherwise enforce its state law rights, without having to incur the additional legal expenses required to seek relief again in this Court or to have to withstand the additional delay associated with it.

9. Bankruptcy Code §362(d)(1) provides that the Court should lift the automatic stay for "cause, including lack of adequate protection."

10. In this case, cause clearly exists to lift the automatic stay because, with the

4

exception of a single $7,700 payment, the Debtor has not paid any Lease payments since filing its bankruptcy petition on September 19, 2014. *See e.g. In re Sweet N Sour 7th Ave Corp.*, 431 B.R. 63, 69 (Bankr. S.D.N.Y. 2010)("Section 362(d)(1) provides that the court shall grant relief from the stay for cause, including the lack of adequate protection of an interest in property of such party in interest . . . . The failure to pay post-petition rent may also serve as grounds for lifting the automatic stay... The Landlord will also not be adequately protected if the Debtor falls behind in postpetition rent")(internal quotations omitted), *citing In re Mad Lo Lo LLC*, 2009 Bankr. LEXIS 1333, 2009 WL 2902567, at *4 (Bankr. S.D.N.Y. May 28, 2009). *See also In re Musikahn Corp.*, 57 B.R. 942, 945 (Bankr. E.D.N.Y. 1986); and *In re Watkins*, 2004 Bankr. LEXIS 2531, 15-16 (Bankr. E.D.N.Y. Dec. 29, 2004)("The failure of a tenant to make post-petition mortgage payments and comply with rental obligations can be cause to lift the automatic stay under section 362(d)(1).") Accordingly, if the Debtor does not make immediate payment of all post-petition amounts due under the Lease within two business days of the Court signing an order granting this Motion, or if the Debtor once again defaults on any of its obligations under the Lease, the Landlord requests that the Court the automatic stay be deemed lifted to allow the Landlord to continue the eviction proceeding and/or otherwise enforce its state law rights.

11. Additionally, the Landlord is currently holding a $42,985.89 security deposit (the "Security Deposit") in accordance with the Lease. The Lease authorizes the Landlord to apply or retain the Security Deposit to "to the extent required for the payment of any Rent and/or Additional Rent or any other sum as to which Tenant is in default or any sum which Landlord may expend or may be required to expend by reason of Tenant's default of any of the terms, covenants, and conditions of this Lease... " (see Lease, ¶ 78.03). Because the Debtor currently owes the Landlord not less than $34,073.62 in post-petition arrearages, $88,718.95 in pre-

petition arrearages, plus legal fees that the Debtor caused the Landlord to incur both pre- and post-petition as a result of, *inter alia*, the eviction proceeding and this Motion, the Landlord additionally requests that the Court lift the automatic stay to allow the Landlord to apply, at its discretion, the Security Deposit to any amounts due under the Lease.

### *III.    The Debtor Should be Compelled to Assume or Reject the Lease Under Bankruptcy Code § 365(d)(2).*

12. Under Bankruptcy Code § 365(d)(4) of the Bankruptcy Code, a debtor that is a tenant under a non-residential real property lease has up to 210 days, including potential extensions, to assume or reject such lease. On request of the counterparty to the lease, a court "may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2).

14. While Chapter 11 debtors are entitled to a certain amount of "breathing space" to determine whether to assume or reject a lease, this "breathing space….is not without limits." *In re Enron Corp.*, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002). In determining a motion to compel a debtor to assume or reject under § 365(d)(2), a court must also consider the moving party's need for certainty and stability. *Id.*

15. In determining whether to compel a debtor to assume or assign a lease, the Court should consider:

> 1) the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;
> 2) the importance of the contract to the debtor's business and reorganization;
> 3) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan; and
> 4) whether exclusivity has terminated.

*See Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982).

6

16. Here, equity and the circumstances of this case militate in favor of granting this Motion and compelling the Debtor to assume or reject the Lease. The Debtor is currently in arrears to the Landlord for the post-petition period in the amount of $34,073.62. This is in addition to the $88,718.95 that the Debtor owes the Landlord for pre-petition amounts that are past due under the Lease. Additionally, the Landlord has been made to incur pre-petition legal fees in connection with commencing an eviction proceeding and post-petition legal fees in connection with this Motion as a result of the Debtor's failure to comply with its obligations under §365(d)(3), which the Debtor is responsible under §78.03 of the Lease. Given the Debtor's ongoing default under the Lease, absent the immediate assumption or rejection of the Lease, the Landlord will be damaged by being made to act as an involuntary lender by financing the Debtor's ongoing operations. This will result in the imposition of a significant and unjustified hardship upon the Landlord. It could also allow the Debtor to "game the system" by enjoying continued use and occupancy of the Property, without making Lease payments, until it makes a decision to assume or reject the Lease. This was not the intent of §365(d)(4). Additionally, at the Debtor's §341 Meeting of Creditors held on October 31, 2014, the Debtor's principal acknowledged under oath that the Debtor is sustaining a loss at the Property and does not have sufficient revenue to pay the post-petition rent in full. While the Debtor explores its "other alternatives," the Landlord should not be forced to provide a rent-free occupancy. The Debtor should accordingly be compelled to make its decision to assume or reject the Lease now.

18. The equities of this case further dictate granting this Motion as the two other bankruptcy cases that are related to this case do not instill any confidence in this Debtor's ability to comply with the requirements of the Bankruptcy Code. In the first related case, *In re Vida Café, Inc.* (case no. 14-10415-REG), the Bankruptcy Court *sua sponte* on May 8, 2014 entered

an order to show cause on account of the related debtor's failure to appear at a status conference (docket no. 12). On October 29, 2014, the U.S. Trustee moved to convert that case or dismiss it (docket no. 29) on account of, *inter alia,* the related debtor's "gross mismanagement," following that related debtor's own motion to dismiss the case (docket no. 24). Additionally, not a single operating report has been filed in that case, notwithstanding that the bankruptcy case was filed in February 2014. The landlord in the second related case, *In re Vida Les, LLC* (case no. 14-12522), has also moved to lift the automatic stay on October 30, 2014 on account of that related debtor's failure to pay post-petition rent (docket no. 12). No operating reports have been filed in that case. Like the other two related bankruptcy cases, this Debtor has not filed a single operating report to date. Accordingly, the Court should disregard any of the Debtor's arguments about needing additional time to appraise its financial condition or any purported importance of the Lease, as these common warning signs are indicative of a case that is not long for Chapter 11.

## CONCLUSION

WHEREFORE, Wineve Realty Corp. respectfully requests that the Court: (1) compel the Debtor to immediately pay all post-petition rent under 356(d)(3) and award the Landlord an administrative expense claim for all post-petition rent that is past due and that is comes due and is subsequently not paid during the bankruptcy; (2) lift the automatic stay and authorize the Landlord to apply the security deposit at its discretion; (3) compel the Debtor to assume or reject

the Lease; and (4) grant such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
       November 14, 2014

                              RIVKIN RADLER LLP
                              *Attorneys for Wineve Realty Corp.*

                              By:   /s/ Matthew V. Spero
                              Stuart I. Gordon, Esq.
                              Matthew V. Spero, Esq.
                              926 RXR Plaza
                              Uniondale, New York  11556-0926
                              (516) 357-3000
                              matthew.spero@rivkin.com

3074128 v2